UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN JACOBO-ARIZAGA,<br><br>Petitioner,<br><br>v.<br><br>PAUL THOMPSON, Warden,<br><br>Respondent. | No. 2:21-cv-01864-KJM-EFB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a federal prisoner proceeding without counsel in this petition for writ of habeas corpus brought under 28 U.S.C. § 2241. ECF No. 1. Currently, a recommendation to dismiss the petition with leave to amend is pending before the District Judge. ECF No. 6 (dated November 22, 2021). On December 27, 2021, petitioner filed a motion for a temporary restraining order, alleging that two correctional officials attempted to intimidate him and made veiled threats against him in retaliation for his filing of the petition. ECF No. 8. For the reasons that follow, the court recommends that the motion be denied without prejudice to its renewal should the case continue (and to petitioner's litigation of the issue in a civil rights action for retaliation and/or denial of access to courts).

I. **Background**

Petitioner is confined in federal prison at FCI Herlong. ECF No. 1 at 1. His petition alleges that respondent has adopted a policy for the application of the "First Step Act" (18 U.S.C.

1

1  §§ 3632, 3624(g)) that is contrary to the statute. *Id*. According to petitioner, lawful application
2  of the Act would result in his release on August 1, 2023 because he has accrued approximately
3  480 days of time credit from approximately 980 days working at a prison job. *Id*. at 1. On
4  November 22, 2021, the undersigned recommended that the court dismiss the petition as unripe;
5  that recommendation is currently pending. ECF No. 6.
6        In his motion for a temporary restraining order, petitioner alleges that, shortly after the
7  findings and recommendations issued, two correctional officers took him to an interrogation room
8  and told him that government attorneys had called management at Herlong, complaining that 60
9  habeas petitions had recently been filed from Herlong and "this waste of time must stop." ECF
10 No. 8 at 1. Special Investigative Services Officer Justin Duron conducted the interview along
11 with an unidentified correctional officer who acted as interpreter. *Id.* Allegedly, the unidentified
12 officer told petitioner, "The judge called Herlong because the court filings are illegal since they
13 all used the same template and you will get five years added to your sentence if you don't talk
14 right now." *Id.* The officers told petitioner that he would be immediately moved from the
15 prison's satellite camp to Herlong's medium security prison if he didn't talk. *Id*. at 1-2. They
16 allegedly also told petitioner that all the other inmates who had filed FSA petitions would get five
17 years added to their sentences by "the judge." *Id.* Petitioner asks the court to issue an order
18 prohibiting further retaliation when he exercises his right to access the courts. *Id*. at 4. He further
19 requests that the court "conduct an in camera review" of ex parte communications between
20 Herlong staff and "DOJ-BOP" and of respondent's counsel Assistant U.S. Attorney Michelle
21 Rodriguez's contacts with DOJ-BOP. *Id.*
22       In response, Ms. Rodriguez states that she "did not compel, directly or indirectly, an
23 interview of any BOP inmate, specifically including petitioner, concerning any FSA filings[.]"
24 ECF No. 9 at 2 n.1. Although she does not address the allegation that a government attorney
25 called the prison to complain about the filings, the declaration by Officer Duron filed in
26 opposition to petitioner's motion, avers that he has "never spoken to Assistant U.S. Attorney
27 Michelle Rodriguez or any federal judge regarding this case." *Id*. at 4. Duron acknowledges that
28 he did interview petitioner on December 15, 2021 but asserts that the interview concerned

"possible misconduct pertaining to approximately thirty habeas petitions filed in the Eastern District of California." ECF No. 9-2 at 2. According to Duron, "BOP counsel" had informed him that Herlong inmates appeared to be filing the petitions using the same template. *Id.* Duron states that "BOP policy generally prohibits correspondence between inmates" and requires legal mail to an inmate to be properly marked. *Id.* at 3. Duron's job was, in part, to investigate whether inmates were attempting to subvert these policies. *Id.*

Duron avers that he asked petitioner if he knew where the template came from; petitioner replied that a stack of copies had been left in the prison law library. *Id.* at 4. When Duron asked petitioner if he knew anything about inmates receiving emails from a former inmate with advice on how to file lawsuits, petitioner replied that he was "not going to tell on anyone." *Id.*

According to Duron, he "advised petitioner that there were many reasons" that could cause a satellite camp inmate to be placed in the Special Housing Unit. *Id.* Duron claims that this statement was not intended as a threat, adding that "[a]t the time I made this statement, my department was investigating several Satellite Prison camp inmates for possible criminal conduct."[1] *Id.* Duron also told petitioner that using the template "could be plagiarism and trigger copyright infringement concerns."[2] *Id.* Duron avers that he has "never spoken to Assistant U.S. Attorney Michelle Rodriguez or any federal judge regarding this case." *Id.*

II. **Analysis**

A temporary restraining order may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A); *Haw. County Green Party v. Clinton*, 980 F. Supp. 1160, 1164 (D. Haw. 1997) ("The standards for granting a temporary restraining order and a preliminary injunction are identical."); *cf. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (observing that an analysis of a preliminary injunction is

---

[1] Duron does not explain how this statement had relevance to an investigation of inmates sharing a template for legal briefs unless intended as a threat. Nor does he explain specifically how these investigations were relevant to his interview with petitioner.

[2] Duron fails to explain how plagiarism by an inmate of another inmate's legal filings was within his duties or relevant to the interview. *Id.*

3

"substantially identical" to an analysis of a temporary restraining order). The purpose of the order is to preserve the status quo and to prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974).

To be entitled to preliminary injunctive relief, a party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). Petitioner's motion does not meet this standard. It addresses conduct that is not a subject of this action, and therefore fails to demonstrate either a likelihood of success on the merits or a serious question on the merits. Rather, proposed findings and recommendations are currently pending which, if adopted by the District Judge, would result in dismissal of the petition before the court.

Generally, allegations of the nature asserted here must be pursued through the prison administrative process and then litigated in a separate action. *See McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (per curiam) and *Rhodes v. Robinson*, 621 F.3d 1002, 1004-07 (9th Cir. 2010) (together holding that claims must be exhausted prior to the filing of the original or supplemental complaint); *Jones v. Felker*, No. CIV S-08-0096 KJM EFB P, 2011 U.S. Dist. LEXIS 13730, at *11-15, 2011 WL 533755 (E.D. Cal. Feb. 11, 2011).

Nonetheless, where circumstances warrant, the court has authority in extraordinary cases to intervene regarding conduct unrelated to the case's claims under The All Writs Act. That Act gives federal courts the authority to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. 1651(a). The United States Supreme Court has authorized the use of the All Writs Act in appropriate circumstances against persons who, "though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 173-74 (1977). To obtain an order under the All Writs Act, the requested order must be "necessary." This language

requires that the relief requested is not available through some alternative means. *Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999).

Although petitioner's allegations of intimidation, if true, are troubling they do not present an emergency warranting the extraordinary remedy of an emergency restraining order under the All Writs Act. The suggestion is that Duron and an unnamed officer attempted to discourage petitioner from exercising his right of access to the courts.[3] There is no evidence of ex parte communications between the court and prison officials. As to allegations of threats for filing the petition, Officer Duron does admit to making statements which, taken at face value, could certainly be taken to imply attempts at intimidation. But the interview itself by Duron and the other officer presents no emergency. Petitioner has been able to proceed with his filings in this habeas action and has presented fully his arguments in support of his habeas petition. He simply has not shown that an extraordinary remedy of an emergency restraining order under the All Writs Act is necessary here to allow him access to the court.

It is therefore not clear that court intervention is necessary at this time to preserve petitioner's ability to litigate the case without interference by prison staff. Accordingly, it is recommended that the motion be denied without prejudice to a future motion should the case (and officials' alleged misconduct) continue and without prejudice to any civil rights action petitioner might file in the future alleging retaliation and/or interference with his right to access the courts.

**III.     Recommendation**

Accordingly, it is hereby RECOMMENDED that petitioner's December 27, 2021 motion for a temporary restraining order (ECF No. 8) be denied without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

---

[3] As noted, any remedy for attempts to chill the exercise of First Amendment rights of access to the courts would ordinarily be found in a civil rights action but not in petition for writ of habeas corpus brought under 28 U.S.C. § 2241.

5

"Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 2, 2022.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE